[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
 Background
This is an action by the State of Connecticut Commissioner of Social Services brought in four counts seeking to set aside certain conveyances made by a former beneficiary of public assistance and to recover grants of public assistance made on behalf of that former beneficiary. The Commissioner has alleged that an application for public assistance under Title 19 Medical Assistance Program was filed on behalf of Morris Budkofsky on January 19, 1995, and that the plaintiff subsequently expended $37,462.94 in medicare benefits on behalf of Morris Budkofsky for the period between January 1, 1995 through December 7, 1995.
The Commissioner's complaint contained four counts as follows:
1. Count One — Fraudulent Conveyance in Violation of Section 17(b)-100;
2. Count Two — Transfer by an Incapable Person in Violation of Section 17(b)-101;
Count Three — Undue Influence as a Motivating Factor in the Transfer in Violation of Section 17(b)-101;
4. Count Four — Conversion of the Assets of the Incompetent.
Count One was withdrawn on May 20, 1999. It is not involved in this dispute. Count Four is subject to a somewhat related Motion to Dismiss but is not directly addressed in the Motion for Summary Judgment.
The plaintiffs Counts Two and Three form the basis of the present dispute.
 Discussion
The defendant claims that Count Two and Count Three are essentially negligence claims. Because he views them as negligence claims he submits that the Statute of Limitations is three years, relying on Connecticut General Statute § 52-577.
The plaintiff State objects to the summary judgment based upon the Statute of Limitations for four reasons: CT Page 12323
1. As a matter of law, the statute of limitation set forth in CGS § 52-5-77 does not apply to causes of action brought by or on behalf of the State;
2. Even if the statute of limitations set forth in CGS §52-577 does apply to actions brought by or on behalf of the State, the genuine issue of material fact exists as to whether the statute was tolled due to the mental incapacity of the transferor/subragor, Morris Budkofsky;
3. Even if the three year statute of limitation set forth in CGS § 52-577 does apply to actions brought by or on behalf of the State as a matter of law and equity, the statute of limitations should not commence to run from the date of the purported transfer, but rather should be calculated from the date that the transferor first applied for public assistance which was the date on which the State would have first become aware of the purported transfers. Finally, it was only after the purported transfers that the State would have the right to bring an action pursuant to CGS 17(b)-101;
4. As a matter of law, the statute of limitations set forth in CGS § 52-577 does not apply to Count Two of the plaintiffs complaint as that count does not sound in tort, but rather seeks the equitable relief of rendering void an inter vivos gift based on a lack of donative intent.
The State first argues that any statute of limitation is tolled because the ward was incompetent. Each side relies onKerwin vs. State, 168 Conn. 498 (1979), to support its claims with regard to the relationship between competency and tolling of a statute of limitations. In Kerwin, the plaintiff was committed to the Institute of Living. He attempted to sue the Institute for false imprisonment and negligent medical care. He had alleged in his complaint that he was insane. The Supreme Court held that
 "absent an allegation which must later be proved, that an insane person was or should have been adjudicated incompetent [citation omitted] or that he was prevented from pursuing his remedies by the tortious or illegal acts of the Institute, the complaint raises no. issue as to the suspension of the operation of the statute of limitations. It being presumed that the plaintiff was competent and capable of pursuing his case in the courts [citations omitted]." Kerwin at 503. CT Page 12324
While it is true that the trial court in Kerwin found that the statute of limitations had not tolled and the Supreme Court affirmed the trial court decision, a reading of the case makes it clear that the Supreme Court was not willing to equate insanity with incompetence. If the Supreme Court had been faced with a claim of incompetence, a matter of factual dispute would have been presented which would defeat a motion for summary judgment.
The defendant's motion for summary judgment, because of the running of the statute of limitations, is based upon the premise that the period of limitation begins to run at the time of the transfer. The State argues in the alternative either that it is not bound by statutes of limitations, or that the statute should not begin to run until assistance is given.
It is clear that in Counts two and three the plaintiff is exercising its right, under Section 17(b)-101, to be indemnified from voidable transfers for Title XIX benefits paid. Section 17 (b)-101 provides that when a person has received assistance and "has any right to rescind, revoke, avoid or otherwise set aside any assignment, transfer or other disposition of property, the State shall be subrogated to such right". This section contains no specific statute of limitations. In Joyell vs. Commissioner ofEducation, 44 Conn. App. 476, 486, Cert. denied, 243 Conn. 910
(1997), the Appellate Court wrote:
 "[A] universal rule in the construction of statutes limiting rights [is] that they are not to be construed to embrace the government or sovereign unless by express terms or necessary implication. Such appears to have been the clear intention of the legislature, and the rights of the government are not to be impaired by a statute unless its terms are clear and explicit, and admit of no other construction . . .
Jovell, supra at 485-86.
The defendant relies on cases such as Orselet vs. DeMatteo,206 Conn. 542 (1988) for the proposition that a party claiming subrogation may not have any greater rights than the original party would have had. In Orselet the plaintiff argued unsuccessfully that its right of subrogation against third parties causing the loss by the insurer to the insured should be governed by the contract statute of limitations (6 years) and not CT Page 12325 by the limitations for tort (3 years). The Supreme Court noted that the insurer's right of subrogation against third persons did not rest on its contract and that the statute of limitations for tort would apply. The Supreme Court stated:
 "The insurer can take no more by subrogation than the insured possess: in this case the right to bring an action within two years of the collision to recover for personal injuries and property damage." Orselet, at 546-547.
None of the defendant's cases, which apply the statute of limitations in a subrogation context, concern subrogation in favor of the state or a municipality.
Section 17(b)-101 contains no express statute of limitation.
Section 17(B)-100 a closely related provision relating to fraudulent conveyance for the purpose of obtaining assistance contains no statutes of limitations, but does contain the following language.
 "In any such action brought to set aside a conveyance or to recover the proceeds of a conveyance made within 24 months before the date of such application for assistance directly or indirectly to a transferee who is a parent, grandparent, descendant or spouse of the transferor, the transferee shall bear the burden of proving that the conveyance was not fraudulent."
The Legislature's obvious purpose in enacting Section 17 (b)-101 was to allow the State a right of subrogation to recover against the transferee when property was transferred and the State bore the ultimate cost of care. Section 17(b)-101 makes no reference to a statute of limitation. The Court recognizes that many public assistance applications are not filed at or around the time of the transfer of the applicant's assets because federal law requires a denial of benefits or the imposition of a penalty period if the transfer was made within the federally dictated "look-back period". 42 U.S.C. § 1396 (p)(c)(1)(a), (B)(i).
The court is mindful of the fact that statutes of limitations do not ordinarily apply to the sovereign. Moreover, Section 17 (b)-101 would be rendered largely meaningless if the statute of limitations began running against the subrogating state at the CT Page 12326 time of the transfer about which the state need not, and ordinarily would not, know anything.
Accordingly, the Court finds that there is a dispute of fact as to whether or not the statute of limitations was tolled by incompetency. Further the court holds that the statute of limitations does not run against the State of Connecticut, or at least does not begin to run at the time of the transfer in question.
For the foregoing reasons, Summary Judgment is denied.
By,
Kevin E. Booth, J.